SLIP OP. 04-60

# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: RICHARD K. EATON, JUDGE**

|  |  |
|---|---|
| MICHAEL J. KENNY, | : |
| | : |
| PLAINTIFF, | : |
| | : |
| v. | :     COURT NO. 03-00011 |
| | : |
| JOHN W. SNOW, | : |
| SECRETARY OF THE TREASURY, | : |
| U.S. DEPARTMENT OF THE TREASURY | : |
| UNITED STATES OF AMERICA, | : |
| | : |
| DEFENDANT. | : |
| | : |

[Plaintiff's motion for judgment upon an agency record denied; Defendant's motion for judgment upon an agency record granted.]

   *Michael J. Kenny*, Pro Se, for Plaintiff.

   *Peter D. Keisler*, Assistant Attorney General, Civil Division, United States Department of Justice; *Barbara S. Williams*, Attorney In Charge, International Trade Field Office, Commercial Litigation Branch, United States Department of Justice (*Harry A. Valetk*), for Defendant United States.

Dated: June 7, 2004

## MEMORANDUM OPINION

EATON, *Judge*: Before the court is plaintiff Michael J. Kenny's ("Plaintiff") motion for judgment

on the pleadings.[1] By his motion, Plaintiff challenges the United States Secretary of the

---

   [1]      Citing both USCIT Rules 12(c) and 56.1, Plaintiff styles his motion as one for "judgment on the pleadings." *See* Pl.'s Br. Supp. Mot. J. Pleadings ("Pl.'s Mem.") at 3. However, as this action was brought pursuant to 19 U.S.C. § 1641(e)(1), and since review of the issues raised herein is based upon an agency record, the court will treat Plaintiff's motion as one made solely pursuant to Rule 56.1.

Treasury's ("Secretary") affirmance of the United States Customs Service's ("Customs")[2]

decision to deny Plaintiff credit[3] for one question on the October 2001 customs broker's license

examination.[4] Defendant United States ("Defendant") opposes Plaintiff's motion and cross-

moves for judgment upon an agency record, pursuant to USCIT Rule 56.1(a). The court has

exclusive jurisdiction to review the denial of a customs broker's license under 28 U.S.C. §

1581(g)(1) (2000) and 19 U.S.C. § 1641(e)(1) (2000).[5] For the reasons discussed below, the

court denies Plaintiff's motion and grants Defendant's cross-motion.

---

[2]     Effective March 1, 2003, Customs was renamed the Bureau of Customs and Border Protection of the United States Department of Homeland Security. *See* Reorganization Plan Modification for the Dep't of Homeland Security, H.R. Doc. 108-32, at 4 (2003).

[3]     While in his complaint, Plaintiff "respectfully requests he be given credit for Question No. 32," Compl. ¶ 14, Plaintiff actually seeks review of the Secretary's decision to deny him a customs broker's license. *See* 19 U.S.C. § 1641(b)(1) ("No person may conduct customs business . . . unless that person holds a valid customs broker's license issued by the Secretary . . . .").

[4]     An applicant for a customs broker's license is required to pass a written examination, which is "designed to determine the individual's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters necessary to render valuable service to importers and exporters." *See* 19 C.F.R. § 111.13(a) (2001).

[5]     Title 19 U.S.C. § 1641(e)(1) states:

> A customs broker, applicant, or other person directly affected may appeal any decision of the Secretary denying or revoking a license . . . by filing in the Court of International Trade, within 60 days after the issuance of the decision or order, a written petition requesting that the decision or order be modified or set aside in whole or in part.

*Id*.

## BACKGROUND

In October 2001, Plaintiff sat for the customs broker license examination in New York City. On November 2, 2001, Customs informed Plaintiff by letter that he had received a score of 73.75%, 1.25 percentage points below the passing score of 75%. *See* Letter from Customs to Michael J. Kenny of 11/2/01; 19 C.F.R. § 111.11(a)(4) (2001). Plaintiff timely appealed his score to Customs, seeking full credit for the answers he provided for Questions 19 and 32. *See* Letters from Michael J. Kenny to Customs of 11/12/01, Admin. R. Docs. XI (Question 19) & XII (Question 32); 19 C.F.R. § 111.13(f). Customs denied Plaintiff's appeal with respect to both questions. *See* Letter from Customs to Michael J. Kenny of 2/8/02.

On February 20, 2002, Plaintiff appealed Customs's decision to the Secretary, but only as to Question 32. *See* Letter from Michael J. Kenny to Deputy Director, Office of Trade and Tariff Affairs of 2/20/02; 19 C.F.R. § 111.17(b) ("Upon the decision of the Assistant Commissioner affirming the denial of an application for a license, the applicant may file with the [Secretary], in writing, a request for any additional review that the Secretary deems appropriate."). On December 11, 2002, the Secretary affirmed Customs's decision to deny Plaintiff's appeal. *See* Letter from Deputy Assistant Sec'y Skud to Michael J. Kenny of 12/11/02.[6] Thereafter, on January 10, 2003, Plaintiff timely commenced this action pursuant to 19 U.S.C. § 1641(e)(1) and

---

[6]     Deputy Assistant Secretary Timothy E. Skud reviewed Plaintiff's appeal under the authority delegated to him by the Secretary. *See* Aff. of Timothy E. Skud, Deputy Assistant Secretary ¶ D; *O'Quinn v. United States*, 24 CIT 324, 324 n.1, 100 F. Supp. 2d 1136, 1137 n.1 (2000) (internal citations omitted).

19 C.F.R. § 111.17(c).[7]

Plaintiff seeks review of the Secretary's decision to uphold the denial of his request for credit with respect to Question 32, and seeks a reversal of the Secretary's decision, thus giving him credit for one additional answer and a passing grade on the Exam. *See* Compl. ¶ 14. Defendant contends that the Secretary's denial of Plaintiff's application for a customs broker's license, based on his test score, was "reasonable" and "supported by substantial evidence," and thus should be sustained. *See* Def.'s Mem. Supp. Mot. J. Admin. R. and Opp'n Pl.'s Mot. J. Pleadings ("Def.'s Mem.") at 8.

## STANDARD OF REVIEW

Title 19 U.S.C. § 1641(e)(3) states that, with respect to an appeal to this Court of the Secretary's decision to deny a broker's license, "[t]he findings of the Secretary as to the facts, if supported by substantial evidence, shall be conclusive." *Id*. Substantial evidence is "more than a mere scintilla." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). It "is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting

---

[7]     Title 19 C.F.R. § 111.17(c) states:

> Upon a decision of the Secretary of the Treasury affirming the denial of an application for a license, the applicant may appeal the decision to the Court of International Trade, provided that the appeal action is commenced within 60 calendar days after the date of entry of the Secretary's decision.

*Id*.

*Consol. Edison Co.*, 305 U.S. at 229). "In applying this [substantial evidence] standard, the court affirms [the agency's] factual determinations so long as they are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusions." *Olympia Indus., Inc. v. United States*, 22 CIT 387, 389, 7 F. Supp. 2d 997, 1000 (1998); *see also Slater Steels Corp. v. United States*, 27 CIT __, __, 297 F. Supp. 2d 1351, 1356 (2003) (where "Commerce's determination . . . was reasonable [it was] thus supported by substantial evidence and in accordance with law.").

**DISCUSSION**

Question 32 required the examinee to classify a beverage under the correct subheading of the Harmonized Tariff Schedule of the United States (2001) ("HTSUS"). The question asked:

> Water Street Fishhouses is importing a beer from Mexico to sell at their eating establishments in Texas. The beer is made from malt with an alcoholic strength by volume of 0.4 percent. It is shipped in 1 liter glass bottles. What is the correct classification of the beer?

Oct. 2001 Exam., Question 32. The choices available to answer this question were:

> A) HTSUS 2202.90.9010, which provided for "Waters . . . and other nonalcoholic beverages . . . Other, Other, Nonalcoholic beer,"
>
> B) HTSUS 2203.00.0060, which provided for "Beer made from malt [i]n containers each holding not over 4 liters: Other,"
>
> C) HTSUS 2203.00.0030, which provided for "Beer made from malt [i]n containers each holding not over 4 liters: [i]n glass containters,"
>
> D) HTSUS 2203.00.0090, which provided for "Beer made from malt [i]n containers each holding over 4 liters,"

> E) HTSUS 2202.90.9090, which provided for "Waters . . . and other nonalcoholic beverages . . . Other, Other, Other."

*See id.*; HTSUS subheadings 2202, 2203.

Plaintiff chose (C) as the correct answer; however, the official answer was (A). In the explanation sheet issued to Plaintiff, Customs explained its reasons for finding (A) to be the correct answer:

> Chapter 22 Note 3 states: for the purposes of heading 2202 the term <u>"nonalcoholic beverages"</u> means beverages of an alcoholic strength by volume not exceeding 0.5 percent vol. Alcoholic beverages are classified in headings 2203 to 2206 or heading 2208 as appropriate.
>
> Chapter 22 Note 2 states: for the purposes of this chapter and of chapters 20 and 21, the "alcoholic strength by volume" shall be determined at a temperature of 20 degrees [Celsius]. The question does not contain a statement that the alcoholic strength by volume was determined at a temperature other than 20 degrees [Celsius].
>
> Therefore, the beer described in question #32 does not meet the terms of subheadings 2203.00.0030, 2203.0060 [sic], or 2203.00.0090 (answers C, B, and D, respectively). Answer E is incorrect because nonalcoholic beer is provided for under subheading 2202.90.9010.

Explanatory Comments to Question 32 (emphasis in original). Thus, Plaintiff was denied credit for Question 32.

Plaintiff contends that answer (C) is the best answer to Question 32 because the question did not state the temperature at which the beverage's alcoholic strength by volume was calculated. *See* Pl.'s Mem. 4–5. In Plaintiff's view, "[t]he absence of any indication at what

temperature the beverage was measured can be the difference between an alcoholic and a non-alcoholic beverage." *Id*. at 5. Plaintiff further states that

> Question No. 32 indicated the alcohol strength of the malt beer was 0.4%, ostensibly making it non-alcoholic, but without knowing at what temperature it was measured that 0.4% is meaningless[.] [I]t may have been measured at 30 degrees Celsius thereby reducing its strength in order to qualify as a non-alcoholic import.

*Id*. at 6 (citation omitted). Plaintiff claims that the specificity of choice (C), which deals with "Beer made from malt [i]n containers each holding not over 4 liters: [i]n glass containers," makes it the best of the available choices. *Id*. at 7.

Defendant argues that "the administrative record reasonably supports Customs' decision to deny [Plaintiff's] application based on his failure to achieve a passing score of 75 on his broker's examination." Def.'s Mem. at 5. As to Plaintiff's argument that Question 32 lacked information necessary to answer the question, i.e., the temperature of the beverage being classified, Defendant reiterates the Secretary's view that Question 32 "stipulates the alcohol strength by volume, making it unnecessary to provide additional information about the temperature at the time of measurement." *Id*. at 7; *see also* Mem. from Anne Shere Wallwork to Deputy Assistant Sec'y Skud of 12/11/02 at 2 ("Note 3 defines nonalcoholic beverages as having an alcoholic strength by volume of not greater than 0.5%, so that the beer specified in the question qualifies as nonalcoholic beer.").

This Court has considered similar cases brought by customs broker's license examinees seeking review of specific exam questions. In *DiIorio v. United States*, 14 CIT 746 (1990), Mr.

DiIorio sought review of five questions from the October 1989 exam after failing to achieve a passing grade of 75%. With respect to Question 38, he claimed that selecting the official answer required an examinee to rely on assumptions. The question asked what course of action a Customs District Director would take after a customs broker's client had written to dispute certain matters with respect to merchandise detained for possible copyright violations. Mr. DiIorio contended that choosing the answer that Customs insisted was correct required the examinees to assume three things: "that whatever his client 'wrote' to the director was actually received; that such letter was received within thirty days after the denial; and that such letter was an acceptable denial." *DiIorio*, 14 CIT at 748. Mr. DiIorio argued that "requiring the examinee to leap through these assumptions in arriving at the correct answer placed an unreasonable burden on [the] test-taker." *Id*. The court, however, upheld the Secretary's denial of the appeal, finding that the Secretary's decision to deny Mr. DiIorio credit for his answers to the exam questions was a reasonable decision. *Id*. at 752. The court stated that Question 38, "[w]hile not perfect" was adequate, despite its "ambiguities." *Id*. at 748. The court specified that judicial review of agency decisionmaking as to "the formulation and grading of standardized examination questions should be limited in scope." *Id*. at 747 (noting the court "[would] not substitute its own judgment on the merits of the Customs examination, but [would] examine decisions made in connection therewith on a reasonableness standard.").

This case presents facts similar to the those in *DiIorio*. There, Mr. DiIorio argued that it was unreasonable for examinees to answer "ambiguous" questions by relying on assumptions. In the present case, Plaintiff similarly alleges that Question 32 was ambiguous. *See, e.g.*, Letter

from Michael J. Kenny to Deputy Assistant Sec'y Skud of 2/20/02 ("The absence of any indication at what temperature the imported malt beer's alcoholic strength by volume was measured can easily be interpreted [in multiple ways] . . . ."). Plaintiff claims that credit should be granted for his answer as the question did not specify the temperature at which the alcoholic strength by volume was calculated, and thus to reach the official answer he would have to assume that the alcoholic strength of the beer was measured at twenty degrees Celsius. *See* Pl.'s Mem. at 5.

In another case the court found the Secretary's denial of an examinee's appeal to be unreasonable. In *O'Quinn v. United States*, 24 CIT 324, 100 F. Supp. 2d 1136 (2000), Plaintiff challenged one question, alleging that it contained insufficient information to answer correctly.[8] The court found that the question required examinees to be familiar with the term "FOB."[9] Moreover, Plaintiff contended, and the court agreed, that since "FOB can refer to both port of

---

[8]      The question asked:

The terms of sale stated on the invoice are Freight on Board (FOB). Which of the following deductions are allowed when determining the entered value?

> A) The freight costs are deductible.
> B) The insurance costs are deductible.
> C) The freight and insurance costs are both deductible.
> D) The inland freight costs are deductible.
> E) No deductions are allowed.

*O'Quinn*, 24 CIT at 326, 100 F. Supp. 2d at 1138. The official answer to the question was (E). Mr. O'Quinn selected (C) as his answer. *Id.*

[9]      The Secretary conceded that FOB was not an industry term. *See O'Quinn*, 24 CIT at 327, 100 F. Supp. 2d at 1139.

embarkation and port of delivery," the question could not be answered as it did not specify which port was involved. *Id*. at 327, 100 F. Supp. 2d at 1139. The court found that all consulted "lexicographic authorities require a named point to follow the 'FOB' term; otherwise, the term in and of itself is ambiguous."[10] *Id*. at 328, 100 F. Supp. 2d at 1140. The court held that "[g]iven the question's incorrect use of the delivery term 'FOB,' it was unreasonable for the Assistant Secretary to affirm Customs' denial of Plaintiff's appeal of this question." *Id*. The court remanded the case to the Secretary, instructing that "Plaintiff's answer . . . must either be deemed correct or the question must be voided." *Id*. at 332, 100 F. Supp. 2d at 1143.

Unlike *O'Quinn*, Plaintiff's disputed exam question was not drafted ambiguously, nor did it require the examinee to rely on assumptions. Plaintiff insists that he chose answer (C) because the stated alcoholic strength of the beverage as 0.4% was "meaningless" unless it was known at what temperature the measurement was made; thus, "answer C was chosen . . . as the best possible answer considering all facts in the question and Chapter Notes." Pl.'s Mem. at 4. However, all the information that Plaintiff needed to answer Question 32 was available. First, the alcoholic strength of the beverage was supplied as part of the question. Second, Chapter 22 Note 3 states that "'nonalcoholic beverages' means beverages of an alcoholic strength by volume not exceeding 0.5 percent vol." HTSUS Chapter 22, Note 3 (emphasis in original). Thus, Plaintiff chose to ignore the stated facts of the question and now labors to find a justification for doing so. Indeed, Plaintiff's choice of (C) is all the more remarkable because, rather than relying

_____

    [10]     For instance, Black's Law Dictionary defined FOB as "Free on board some location (for example, FOB shipping point; FOB destination)." BLACK'S LAW DICTIONARY 642 (6th ed. 1990).

on the given fact that the "beer . . . [had] an alcoholic strength by volume of 0.4 percent," he chose to invent a fact by assuming that the beer had an alcoholic strength by volume in excess of 0.5%. Therefore, the court agrees with the Secretary that since "the question [itself] stipulate[d] the alcohol strength by volume . . . [it was] unnecessary to provide additional information about the temperature at time of measurement." Mem. from Anne Shere Wallwork to Deputy Assistant Sec'y Skud of 12/11/02 at 2.

## CONCLUSION

For the foregoing reasons, the findings of the Secretary, and the subsequent decision not to grant a customs broker's license to Plaintiff, is "supported by substantial evidence." 19 U.S.C. § 1641(e)(3). Accordingly, the court denies Plaintiff's motion for judgment upon an agency record and grants Defendant's cross-motion. Judgment shall be entered accordingly.

/s/ Richard K. Eaton
Richard K. Eaton

Dated: June 7, 2004
New York, New York